UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRYAN S. BAKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 1:19-cv-00392-JD-MGG |

**<u>ORDER</u>**

Plaintiff Bryan S. Baker appeals the Commissioner's decision to deny disability benefits. The Court referred the case to Magistrate Judge Michael G. Gotsch, Sr. for a report and recommendation, pursuant to General Order 2018-14A, 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72-1(b). [DE 11]. After the matter was ripe, Magistrate Judge Gotsch issued his report and recommendation on September 25, 2020, recommending that the Court affirm the decision of the Commissioner. [DE 23]. Mr. Baker filed a timely objection to the report and recommendation [DE 24], to which the Commissioner responded, indicating he stands on his response brief [DE 25]. For the reasons set forth below, the Court adopts, in part, and rejects, in part, the report and recommendation and remands this matter to the Commissioner for further proceedings.

**I. FACTUAL BACKGROUND**

Mr. Baker applied for supplemental security income benefits and insurance on January 4, 2017, alleging disability beginning October 20, 2015. Both claims were denied initially and

1

again upon reconsideration. After a hearing in April 2018, the ALJ issued an unfavorable decision, concluding Mr. Baker was not disabled.

Mr. Baker alleged disability due to degenerative arthritis in both hips, degenerative disc disease, impact fracture in the lower spine, and two bulging discs on his lower spine. On April 25, 2014, Mr. Baker had a lumbar spine MRI. (R. 337). Dr. Adam Gregory interpreted the results and indicated that although *no definite nerve root impingement was identified*, clinical correlation was necessary for signs of left S1 radiculopathy. (R. 338). On August 30, 2017, Dr. Ahmer Ghori, Mr. Baker's treating neurosurgeon, noted in a treatment plan that an MRI from 2014 (the same MRI reviewed by Dr. Gregory) showed "lateral recess stenosis at L4-L5 and left sided disc herniation at L5-S1 *impinging the left nerve root*." (R. 517) (emphasis added). On November 21, 2017, Mr. Baker had another lumber spine MRI performed. Dr. Kulkarni, interpreted this MRI, indicating, "[d]egenerative spurring, disc disease and facet hypertrophy at L4-5 and L5-S1 levels resulting in lateral recess and/or neural foramen narrowing" in addition to "[p]robable free disc material at L5-S1 situated between the left lateral recess and neural foramen *with potential for impingement of the L4 and L5 nerve roots*." (R. 540) (emphasis added).

During the hearing, the ALJ submitted a hypothetical to the VE. (R. 60–61). The VE then gave three examples of jobs that could be performed including: production inspector, production assembler, and addresser. (R. 62). After the ALJ added a limitation to include "a sit-stand option after 30 minutes," the VE opined that the jobs of production inspector, production assembler, and addresser would still be available in reduced numbers. (R. 62–63). Mr. Baker's attorney asked the VE if the reduction in job numbers would be affected if the sit-stand option is reduced to every 15 minutes, to which the VE responded that it would not make a difference because he does not differentiate between time intervals for the sit-stand options when estimating jobs. (R.

2

66). The VE further testified that the job availability numbers that he had given previously were based solely on his professional opinion rather than objective data. (R. 66–67).

## II. STANDARD OF REVIEW

The Court's review of a Magistrate Judge's report and recommendation is governed by 28 U.S.C. § 636(b)(1), which provides in part:

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Under Fed. R. Civ. P. 72(b), the Court must only make a *de novo* determination of those portions of the Magistrate Judge's report and recommendation to which specific written objections have been made. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). If no objection or only a partial objection is made, the Court reviews those unobjected portions for clear error. *Id*. In addition, failure to file objections with the district court "waives appellate review of both factual and legal questions." *Id*. Under the clear error standard, the Court can only overturn a Magistrate Judge's ruling if the Court is left with "the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). Given Mr. Baker's objections to the report and recommendation, this Court reviews *de novo* the objected portions, determining for itself whether the ALJ's decision is supported by substantial evidence or was the result of an error of law.

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security.[1] *Schomas v. Colvin*, 732 F.3d 702, 707

---

[1] Neither party objected to the portion of the report and recommendation pertaining to the discrepancy in the record regarding the Appeals Council review and decision. The Court, finding

(7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to

---

no clear error, adopts the report and recommendation's analysis and finds Mr. Baker exhausted his administrative remedies or alternatively, the Commissioner waived Section 405(g)'s exhaustion requirement as is his right, and therefore, the ALJ's decision is deemed the final decision of the Commissioner and is reviewable by this Court. [DE 23 at 2–4].

address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. STANDARD OF DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The

ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Mr. Baker raises several arguments in support of remand. First, Mr. Baker argues the ALJ erred at step three in determining disability for two independent reasons: 1) by failing to confront the evidence which supported the meeting of Listing 1.04A and provided a conclusory and perfunctory statement in concluding Mr. Baker did not meet the Listing, and; 2) by failing to engage in any meaningful analysis of whether Mr. Baker's impairments medically equals Listing 1.04A and failing to submit the threshold medical imaging most relevant to medical equivalence to a medical expert for an opinion on the issue as required by the regulations. Second, Mr. Baker argues the ALJ erred at step five for three different reasons: 1) by relying on outdated descriptions in the DOT of how relevant jobs are performed; 2) by relying on the VE's testimony which was not consistent with the DOT and failing to explain how she reached her conclusion that it was consistent, and; 3) by relying on the VE's testimony regarding the number of inspector, assembler, and addresser jobs available because the testimony is speculative and without explanation or data. The report and recommendation did not find any of these arguments to warrant remand and affirmed the Commissioner's decision. Mr. Baker objects to several of those findings. The Court addresses each issue in turn.

### A. Step Three Issues

      *a. Confrontation of Contrary Evidence and Analysis of Listing 1.04A*

Mr. Baker argues that the ALJ erred by failing to meaningfully confront the evidence which supported the meeting of Listing 1.04A. Additionally, he argues that the ALJ provided a wholly conclusory and perfunctory evaluation of whether Mr. Baker met Listing 1.04A, which failed to provide the Court the necessary logical bridge between the record evidence and the ALJ's conclusion. *Terry*, 580 F.3d at 475. Listing 1.04 describes spinal disorders (including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, and vertebral fractures), resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Part A also requires: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." *Id.* In her decision, the ALJ stated "[t]he substantial evidence of record fails to support a finding that the claimant experiences evidence of nerve root compression, spinal arachnoiditis, or lumber spinal stenosis, as required [in Listing 1.04]; thus this Listing is not met." (R. 17).

In considering the ALJ's entire decision in determining whether her step three rationale was sufficient, the report and recommendation found the ALJ adequately discussed the evidence throughout the decision and any failure to discuss the April 2014 and November 2017 MRIs more thoroughly is harmless error because neither MRI established the nerve root compromise Mr. Baker claims they do. Mr. Baker objects to this finding in the report and recommendation,

7

arguing it is a misunderstanding of the medical imaging and exhibits the complex evaluation of the listing-relevant evidence that is harmfully lacking from the ALJ's decision.

      The Court sustains Mr. Baker's objection and declines to adopt this portion of the report and recommendation. The Seventh Circuit has "held that [when] considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Kastner v. Astrue*, 697 F.3d 642, 647 (7th Cir. 2012) (citation omitted). "An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace his path of reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The Seventh Circuit has repeatedly found the very type of perfunctory analysis as the ALJ provided here to be inadequate to dismiss an impairment as not meeting or equaling a Listing. *See Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015) (finding inadequate an ALJ's analysis of Listing 1.04 because the ALJ failed to acknowledge several aspects of the record that could meet or equal the listing); *Kastner*, 697 F.3d at 647–48 (remanding where the ALJ's cursory Listing analysis failed to articulate rationale for denying benefits when record supported finding in claimant's favor); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (concluding the ALJ's "two-sentence consideration of the Listing of Impairments [was] inadequate and warrant[ed] remand."); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (reversing because ALJ's Listing analysis was "devoid of any analysis that would enable meaningful judicial review"). Therefore, the Court finds the ALJ's conclusory statement insufficient to establish the requisite logical bridge from the evidence.

      The Court's analysis does not end there, however. In accordance with *Jeske v. Saul*, the Magistrate Judge considered the entirety of the ALJ's decision when determining whether her

analysis of the record when formulating the RFC was an adequate explanation of her conclusion that Mr. Baker did not meet Listing 1.04A. 955 F.3d 583, 589–90 (2020). Nevertheless, in reviewing the rest of the ALJ's decision, the Court finds it "devoid of any analysis that would enable meaningful judicial review," and accordingly, fails to create the necessary logical bridge from the evidence to the conclusion that Mr. Baker does not meet Listing 1.04A. *Brindisi*, 315 F.3d at 786. While the Court recognizes that the ALJ does cite to Exhibit 8F, —the exhibit that includes Dr. Ghori's August 2017 treatment plan which finds nerve root impingement in the April 2014 MRI—it is not cited in discussion of Dr. Ghori's interpretation. (R. 19–20). Rather, the ALJ cites to Exhibit 8F in reference to Mr. Baker's May 2017 and August 2017 hip replacement, as well as physical examinations referencing his range of motion. *Id.* Throughout the rest of the decision, the ALJ references the Listing threshold nerve root impingement or compromise once, however in doing so, does not discuss how the evidence relates to her Listing finding:

> Although he had an elevated A1C, he had some limb numbness, and imagining of the claimant's spine showed degeneration, disc height loss, and the possibility of free disc material at L5-SI *with the potential for impingement of nerve roots*, he also reported that his hip condition improved "significantly," that his previous hip pain was gone, and he was not using an assistive device.

(R. 20) (emphasis added). This only references the November 2017 MRI, interpreted by Dr. Kulkarni, and does not reference either interpretation of the April 2014 MRI. The decision also fails to reference Dr. Gregory's interpretation that although no definite nerve root impingement was identified, clinical correlation was necessary for signs of left S1 radiculopathy, found in Exhibit 1F. (R. 338). The Court again acknowledges that the ALJ cited to this exhibit in her decision, however, in doing so, she did not engage in any analysis of this particular MRI. (R. 19). The citations to Exhibits 1F and 8F in reference to conclusions not pertaining to whether Mr. Baker meets Listing 1.04A does not sufficiently confront the evidence or trace her path of

reasoning. *Diaz*, 55 F.3d at 307. The report and recommendation finds Dr. Gregory's and Dr. Ghori's statements regarding the April 2014 MRI to be conflicting, and therefore, Mr. Baker has not established that nerve root impingement or compromise exists. However, without any discussion of either statements in her decision, the ALJ failed to provide this Court the opportunity for meaningful review of whether she did in fact find these statements to be conflicting and failed to create the logical bridge from this evidence to the conclusion that Mr. Baker does not meet Listing 1.04A. Accordingly, the Court REJECTS this portion of the report and recommendation and finds that remand for further consideration is required.

      b.   *Listing 1.04A Medical Equivalence Analysis*

A claimant may also satisfy a Listing by showing that his impairment is accompanied by symptoms that are equal in severity to those described in the Listing. 20 C.F.R. § 404.1526. In her decision, the ALJ found "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment." (R. 18). Mr. Baker argued the ALJ committed reversable error in failing to engage in any meaningful analysis of medical equivalence and failing to submit the threshold medical imaging most relevant to medical equivalence to a medical expert for an opinion on the issue. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670. "Medical equivalence must be based on medical findings. . . . We also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence." *Id.* (citing 20 C.F.R. § 404.1526(b)). *See also* SSR 96-6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of

equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.").

While the state agency physicians last reviewed Mr. Baker's medical records in July 2017 (R. 126), opining on Listing equivalence, the 2014 and 2017 MRIs were not entered into the record until April 2018. (R. 317, 476). The Commissioner does not dispute that these MRIs were not submitted to a medical expert to determine whether Mr. Baker's impairments equal a Listing. The report and recommendation concludes that because the MRIs were never reviewed by a medical expert as required, the ALJ erred by assessing medical evidence without the benefit of the expert's opinion. This finding is not objected to by Mr. Baker and in finding no clear error, the Court adopts this section of the report and recommendation. However, the report and recommendation goes on to determine that this error was harmless and does not warrant remand because Mr. Baker did not meet his burden to demonstrate that his impairments meet or medically equal Listing 1.04A. Mr. Baker objects to this portion of the report and recommendation, arguing the Magistrate Judge's conclusion of the medical imaging evidence should be reserved for a medical expert. The Court sustains Mr. Baker's objection and declines to adopt this finding in the report and recommendation.

Errors are harmless when the court can "predict with great confidence that the result on remand would be the same." *Schomas*, 732 F.3d at 707. However, the outcome on remand is not predetermined in this case, and a finding of harmless error would be inappropriate. While one interpretation of the 2014 MRI, by a radiologist, opines that no nerve root infringement or compromise exists, the same opinion seeks clinical correlation for any signs of radiculopathy. (R.

11

338).[2] A later opinion by a neurologist of the same MRI does indicate nerve root infringement. Additionally, the one MRI the ALJ does briefly mention in her decision indicates the potential for nerve root infringement. (R. 540). Whether these opinions are conflicting or fail to establish a medical equivalence to Listing 1.04A is not for the Court to decide and without the relevant evidence being submitted to a medical expert, it was not for the ALJ to decide either. In *McHenry v. Berryhill*, the Seventh Circuit found that the ALJ impermissibly assessed the MRI report on his own without the assistance of a medical expert. 911 F.3d 866, 871 (7th Cir. 2018). An ALJ may not "play[ ] doctor" and interpret "new and potentially decisive medical evidence" without medical scrutiny. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ruling that the ALJ erred in failing to submit claimant's first MRI in 11 years to medical scrutiny and in interpreting results herself). An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are "consistent" with the ALJ's conclusions about his impairments. *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018). The Court sees little difference in the facts of *McHenry* and *Akin* with what the ALJ did here. The MRI results may corroborate Mr. Baker's complaints and allegations, or they may lend support to the ALJ's original interpretation, and that the threshold impairment to meet or equal Listing 1.04A is not present, but either way the ALJ was not qualified to make her own determination without the benefit of an expert opinion. *See id.* Therefore, similar to *McHenry* and *Akin*, the Court finds that the ALJ's determination that Mr. Baker's condition did not medically equal Listing 1.04A was not supported by substantial evidence because she failed to obtain a medical expert to review the 2014 and 2017 MRIs.

---

[2] "Radiculopathy describes a range of symptoms produced by the pinching of a nerve root in the spinal column" and "frequently include pain, weakness, numbness and tingling." *Radiculopathy*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (last visited Nov. 5, 2020).

The Court therefore ADOPTS the portion of the report and recommendation that finds the ALJ committed error when failing to submit the necessary evidence to a medical examiner to determine if Mr. Baker's ailments were the medical equivalence of Listing 1.04A. However, the Court REJECTS the portion of the report and recommendation that finds this error to be harmless. In its *de novo* review of the record, the Court finds this error to be harmful and prejudicial to Mr. Baker and therefore requires remand for further consideration.

**B. Step Five Issues**

    *a. Reliance on Outdated Job Descriptions*

Mr. Baker alleges the ALJ improperly relied on outdated descriptions in the DOT of how certain jobs, namely inspector, assembler, and addresser, are performed. He argues that these jobs identified by the VE have changed since they were originally defined in the DOT, implicating doubt whether a person with Mr. Baker's RFC could actually perform the jobs. The report and recommendation found that Mr. Baker offered no evidence to support disregarding the DOT's definitions and noted that no court has overruled the DOT's job descriptions or a VE's ability to rely upon them, and therefore, concluded that the ALJ did not commit any error in relying on them. Mr. Baker does not object to this portion of the report and recommendation. Accordingly, after conducting its review, the Court finds no clear error and ADOPTS the report and recommendation on this point.

    *b. Consistency of VE's Testimony with the DOT*

Next, Mr. Baker alleges that the VE's testimony was not consistent with the DOT and the ALJ failed to explain how she reached her conclusion that it was consistent. The report and recommendation found that although the VE testified that the reduction in job numbers he provided were "certainly not in the DOT" (R. 66), Mr. Baker failed to show that this creates a

conflict with the DOT. The VE testified that while his testimony included additional comments based only on his experience and training, "nothing here is inconsistent with anything that is in the DOT." (R. 65). Therefore, the report and recommendation found that Mr. Baker did not show that the ALJ failed to comply with the requirements of SSR 00-4p in her step five consideration of the VE's testimony. Mr. Baker does not object to this portion of the report and recommendation. Accordingly, after conducting its review, the Court finds no clear error and ADOPTS the report and recommendation on this point.

### c. *VE's Testimony as to Job Number Availability*

Lastly, Mr. Baker alleged that the VE's testimony regarding the number of inspector, assembler, and addresser jobs available is speculative and without explanation or data. When asked by Mr. Baker's attorney how he reached the job number reductions when applying a sit-stand limitation to the ALJ's posed hypothetical, the VE testified:

> Only my professional opinion. Again, this is certainly not in the DOT. I think we're getting—we're talking about different types of variables where you really can't, you know, use any set methodology or practice and suggest numbers that would be accurate in any manner. So, again, I only rely on my almost 40—well, over 40 years of vocational rehab experience and job placement, et cetera. There are very common entry-level-type jobs. So it's really a professional estimate based on my experience and really nothing more than that. I don't think one can really do more than that.

(R. 66-67). Mr. Baker argues based on this testimony, the job numbers the VE provided are "conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). The report and recommendation found Mr. Baker did not establish that the VE's testimony for calculating job numbers is flawed, that the numbers were inaccurate, or that his professional experience was not applicable, therefore, the ALJ's reliance on the VE's testimony was not prejudicial.

Mr. Baker objects to this finding. His objection relies entirely on the recent Seventh Circuit case *Brace v. Saul*, 970 F.3d 818 (7th Cir. 2020), which applies the Circuit's own precedent and *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). Mr. Baker's substantial reliance on *Brace* is not persuasive, however, and the Court overrules this objection to the report and recommendation. In *Brace*, when questioned about the methodology used to conclude the available job numbers, the VE testified to a methodology that the court found "neither cogent nor thorough" and even "unintelligible." 970 F.3d at 822. During the hearing, Brace's attorney objected to the testimony, stating it lacked sufficient foundation and methodological rationality. *Id.* at 821. No such objection occurred during Mr. Baker's hearing. Had Mr. Baker's attorney challenged the job-number estimate during the hearing the ALJ "'must require the VE to offer a reasoned and principled explanation'" of the method he used to produce it. *Id.* at 822. (quoting *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018), *cert. denied,* 139 S. Ct. 808 (2019). Instead, here, Mr. Baker's attorney asked how the VE arrived at the numbers and his attorney seemingly accepted the answer, moving on to the next question.

In his opening brief and again in his objection to the report and recommendation, Mr. Baker now objects that the VE used no methodology at all and therefore is not consistent with case law. However, as the report and recommendation notes, the Supreme Court found "[e]ven without specific data" and "even without significant testing," the testimony may have "sufficient indicia of reliability to support a conclusion about whether an applicant could find work." *Biestek*, 139 S. Ct. at 1156–57. *Brace* and *Biestek* have not found a VE's experience to be insufficiently reliable. In fact, again, as the report and recommendation notes, Mr. Baker's objection is inconsistent with SSR 00-4p, which allows VEs to invoke "publicly available sources[,] . . . information obtained directly from employers and data otherwise developed from

their own experience in job placement or career counseling." *Id*. at 1152–53 (citing SSR 00-4p) (internal quotations omitted). As this requires a "case-by-case" inquiry, the Court does not find, in its own review of the record, that the ALJ's reliance on the VE's job-number testimony constitutes reversal error. *Id.* at 1157. Therefore, the Court overrules Mr. Bakers objection, and ADOPTS this portion of the report and recommendation.

## V. CONCLUSION

Accordingly, the Court ADOPTS the Magistrate Judge's report and recommendation as to the reliance on the DOT job descriptions, consistency of the VE's testimony with the DOT, and VE's job number testimony. The Court, however, REJECTS the portion of the report and recommendation on the issues pertaining to step three of the ALJ's analysis and finds harmful error in the ALJ's decision, and thus declines to affirm the decision. The Court REMANDS for additional proceedings consistent with this opinion. The clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: November 10, 2020

            /s/ JON E. DEGUILIO
           Chief Judge
           United States District Court